## R. W. MILLSAPS *v.* J. T. BOND.

1. MORTGAGES. *Senior and junior. Order of sale under former.*

   In the foreclosure of a senior mortgage on lands, only a part of which are covered by a junior mortgage, the land not included in the junior mortgage should be decreed to be sold first, and a decree in such case directing that the land not embraced in the junior mortgage be first sold is erroneous and may be reversed upon the appeal of the junior mortgagee.

2. SAME. *Right asserted in answer. Effect as to decree. Chancery practice. Case in judgment.*

   B. filed a bill to foreclose a mortgage on two lots. M., who held a junior mortgage on one of the lots, answered and insisted that the lot not covered by his mortgage should be first sold. B. then moved to dismiss his bill as to the lot not covered by M.'s mortgage. This motion was not sustained, but a final decree was entered ordering that the lot covered by both mortgages be sold, without any direction as to the other lot. M. appealed. B. here contends that M. did not object to the decree. *Held,* that complainant's motion was properly not sustained, and as M. in his answer insists on his right in respect to the sale of the lots, it cannot be said that he did not object to the decree denying such right.

APPEAL from the Chancery Court of Pike County.

HON. LAUCH MCLAURIN, Chancellor.

On February 8, 1879, W. M. Connerly executed a mortgage on lot 8, square 14, town of Magnolia, on lots 3 and 4, square 19, town of Magnolia, and on certain lands in Pike County to J. T. Bond to secure certain notes given by the former to the latter. Afterward Connerly executed a mortgage on lot 8, square 14, town of Magnolia, to R. W. Millsaps, and sold the lands in Pike County

to F. M. Lee. On condition broken J. T. Bond filed this bill to foreclose his mortgage, and made W. M. Connerly, R. W. Millsaps, and F. M. Lee defendants. The bill sets out the above facts, but does not give the date of the Millsaps mortgage or of the conveyance to Lee.

Lee answered, showing that the conveyance to him was made on January 7, 1880.

Millsaps answered, showing that his mortgage was given on June 28, 1879, and that it was recorded before Lee's purchase, and that a large balance was still due him on the mortgage. He contended that the land conveyed to Lee, and lots 3 and 4, square 19, town of Magnolia, covered by complainant's mortgage, but not by his mortgage, should be first sold, and the proceeds devoted to complainant's claim. For some reason, not stated in the record, the complainant filed what he termed a "substituted" bill, in which he set out the date of Millsaps' mortgage and Lee's conveyance as above stated. A decree *pro confesso* was taken against Connerly. After the case had been set down for final hearing on the "substituted" bill, the original papers, which seem to have been mislaid, were found, and the Chancellor remanded the case to rules.

On motion of F. M. Lee, the Chancellor ruled out the answer of Millsaps so far as it might be introduced as evidence against his co-defendant, F. M. Lee.

The complainant moved for leave to dismiss his bill as to lots 3 and 4, square 19, town of Magnolia, the same being the land covered by the complainant's mortgage and not mortgaged to Millsaps nor sold to Lee. The record recites that "the motion docket shows that this motion was sustained by the court, but there is no order on the minutes to that effect." The cause was again set down for hearing on the "original bill, answers of F. M. Lee and R. W. Millsaps, and *pro confesso* against W. M. Connerly." The Chancellor ordered in his final decree that lot 8, square 14, town of Magnolia, and the lands in Pike County be sold, or so much as necessary to satisfy complainant's debt; that the town lot 8 be first sold, and if not sufficient that the county land be then sold. From this decree R. W. Millsaps appealed.

*R. H. Thompson,* for the appellant.

1. Nothing can be better settled than that if the lien debtor sell off, as Connerly did, at different times, the incumbered property, it will be liable to the creditor holding the lien (Bond) in the inverse order of the alienations ; and the first purchaser (Millsaps) may, through the chancery court, remit the creditor to the property of the purchasers subsequent to himself, and force him to obtain satisfaction, beginning with the property of the last purchaser; and the property of the first purchaser can only be subjected to the payment of the balance left after the property of all the purchasers has been exhausted. *Kansler* v. *Ford,* 47 Miss. 289 ; *Agricultural Bank of Miss.* v. *Pallen,* 8 S. & M. 357; *Keaton* v. *Miller,* 38 Miss. 630; *Rollins* v. *Thompson,* 13 Smed. & M. 522. And yet this rule of law and highly equitable and reasonable doctrine was reversed in this cause in the court below.

I am disposed to think that the Chancellor might very well under the pleadings have declined directing the order in which the land should be sold, but the objection is that he went further and specified the order in which the land was to be sold, and so directed adversely to the true rule and adversely to the interest of appellant.

The " substituted " bill gave the true dates, true according to each of the answers, and it was a part of the record, and it shows appellant's superior rights.

2. Again, all reason and authority was violated when the court permitted Bond to discharge that portion of the property from his mortgage which Connerly had not incumbered or sold—lots 3 and 4 in square 19. This should have been treated as primarily liable to Mr. Bond, and if he saw proper to discharge it he should have his debt reduced by the amount of its value. These several pieces of property stood related to the debt as in positions analogous to principal and security, and its release released the other property to the extent of its value. See Brandt on Suretyship and Guaranty, § 21.

*S. E. Packwood,* for the appellee.

It is in the discretion of a chancery court to direct how the lands

embraced in a mortgage should be sold in point of time—the court being without evidence in this case as to the date of the mortgage to Millsaps and the deed of conveyance to Lee. It was a matter of no importance to the appellee, Bond, in what order the lands in controversy were sold, for in the court below the contention on this point was between Lee and Millsaps; but, as the sale was made under the decree rendered, and the appellee became the purchaser of the lot in Magnolia, he is now desirous that the sale should not be disturbed.

COOPER, C. J., delivered the opinion of the court.

Whether in the absence of all evidence competent as between the junior mortgagee and the purchaser of a part of the mortgaged property to establish the respective dates of their conveyances, the court ought to have made any decree directing the order in which the lands so mortgaged or conveyed should be sold, it is unnecessary to decide, since the decree must be reversed on another ground. By his bill, which was taken for confessed against the defendant, Connerly, the complainant, charged that a part of the mortgaged premises had been, subsequent to the execution and enrollment of his own mortgage, mortgaged to the defendant, Millsaps, and a part sold to Lee, leaving, so far as the record discloses, a part of the mortgaged property in the mortgagor unincumbered by any other conveyance or lien. That this land should be first applied to the payment of the mortgage sought to be foreclosed is required by the plainest principles of equity, and is recognized as the right of the junior mortgagee by an unbroken line of authorities. The case is argued here as though the bill had been dismissed on the application of the complainant and without objection by the junior mortgagee as to the lots of land of which Connerly remained owner, subject only to the complainant's mortgage, but this assumption is not supported by the record. The record shows that the complainant made a motion for leave to dismiss his bill as to such lots, but this motion was not sustained by the Chancellor, so far as the record shows, and it ought not to have been. By his answer the defendant, Millsaps, insisted that the lands not embraced in his

mortgage should be first sold, and it was upon this answer, not changed or modified, that the final hearing was had. It cannot be said that one who throughout the trial insists upon a right by his pleading does not object to a decree by which that right is refused. The record suggests that the complainant and the other defendants have acted in concert to the injury of the appellant, but in so doing a manifestly erroneous decree has been obtained, which must be reversed.

*We will not enter a final decree here, but reverse the one entered in the court below and remand the cause for further proceedings there.*